# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

DEADRA MINIRTH                                                              PLAINTIFF


v.                              NO. 3:06CV00089 HDY


JO ANNE B. BARNHART,                                                        DEFENDANT
Commissioner of the Social
Security Administration


## MEMORANDUM OPINION AND ORDER

The record reflects that in September of 2003, plaintiff Deadra Minirth ("Minirth")

filed an application for supplemental security income benefits pursuant to the provisions

of the Social Security Act ("Act").   Her application was denied initially and upon

reconsideration.   She next requested, and received, a de novo administrative hearing

before an Administrative Law Judge ("ALJ").   In February of 2006, the ALJ issued a ruling

adverse to Minirth.   She appealed the ruling to the Appeals Council where the decision

of the ALJ was affirmed.   The decision of the ALJ thus became the final decision of the

Commissioner of the Social Security Administration ("Commissioner").   In May of 2006,

Minirth commenced this proceeding in which she challenged the final decision of the

Commissioner.

The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions."  See Id. at 1012.  The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion.  See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is wise to identify the findings.  The record reflects that the Commissioner made findings pursuant to the five step sequential evaluation process.[1]  At steps one through four, the Commissioner made the following findings:

(1) at step one, the Commissioner found that Minirth has not engaged in substantial gainful activity since September 11, 2003, the alleged onset date;

(2) at step two, the Commissioner found that Minirth's "history of [an] anterior cruciate ligament tear of [her] left knee" and her "history of occipital/cervicalgia, myofascial pain, fibromyalgia, and back pain" are severe impairments, see Transcript at 22;

---

[1]

The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work."  See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

(3) at step three, the Commissioner found that Minirth does not have an impairment, or combination of impairments, that meets or equals a listed impairment;

(4) the Commissioner next found that Minirth retains the residual functional capacity to perform "essentially the full range of sedentary work," see Transcript at 22; and

(5) at step four, the Commissioner found that Minirth has "no history of past relevant work at the substantial gainful level," see Transcript at 22, and is therefore incapable of returning to any past relevant work.

At step five, the Commissioner was called upon to determine whether Minirth can perform any work.[2]  The Commissioner found that Minirth is a younger individual with more than a high school education but has no transferable work skills.  Considering her age, education, work experience, and residual functional capacity, the Commissioner found that a "finding of 'not disabled' [is] supported by the application of ... Medical-Vocational Rules 201.27 through 201.29, without regard to the existence of transferable work skills."  See Transcript at 21.  On the basis of the foregoing findings, the Commissioner concluded that Minirth is not disabled within the meaning of the Act.

---

[2]

In moving to step five, the Commissioner specifically noted that "the burden shifts to the [Commissioner] to show that there are other jobs existing in significant numbers in the local, regional and/or national economy that [Minirth] can perform, consistent with her residual functional capacity, age, education, and work experience." See Transcript at 20.

Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Minirth thinks not and advances several reasons why.  The Court has thoroughly examined the record and finds that two reasons justify remanding this proceeding: (1) the Commissioner erroneously found that Minirth's mental impairment is not severe, and (2) the Commissioner erroneously relied upon the Medical-Vocational Guidelines ("Guidelines") in carrying the burden of proof at step five.

At step two, the claimant bears the burden of proving that her impairment is severe.  An impairment is severe if it has "'more than a minimal effect on the claimant's ability to work.'"  <u>See</u> <u>Henderson v. Sullivan</u>, 930 F.2d 19, 21 (8th Cir. 1992) [quoting <u>Hudson v. Bowen</u>, 870 F.2d 1392, 1396 (8th Cir. 1989)].  At step five, the burden of proof shifts to the Commissioner to show that "the claimant is capable of performing other jobs in the national economy that are consistent with her medically determinable impairments, age, education, and work experience."  <u>See</u> <u>Reed v. Sullivan</u>, 988 F.2d 812, 815 (8th Cir. 1993).

> "… [T]he [Commissioner] must determine the claimant's residual functional capacity …, that is, what [s]he can still do physically even with [her] impairments, and also the claimant's age, education, and relevant work experience-the latter three findings being referred to as vocational factors, as opposed to [residual functional capacity], which is a medical factor."  …  "If the [Commissioner's] findings as to [residual functional capacity], age, education, and work experience fit any of the combinations of those criteria contained in the Tables of Appendix 2 to Part 404, then the [Commissioner] must reach the conclusion (either 'disabled' or 'not disabled') directed by the [Guidelines] …"

> Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the [Commissioner] is required to utilize testimony of a vocational expert. ... In those instances, the [Commissioner] cannot rely exclusively on the guidelines to direct a conclusion of whether the claimant is "disabled" or "not disabled." ... Instead, testimony of a vocational expert must be taken. ... The exception to this general rule is that the [Commissioner] may exclusively rely on the guidelines even though there are nonexertional impairments if the [Commissioner] finds, and the record supports the finding, that the nonexertional impairments do not <u>significantly</u> diminish the claimant's [residual functional capacity] to perform the full range of activities listed in the guidelines. ...

See Id. at 815-816.  [Emphasis in original].[3]

The Commissioner found at step two that Minirth's history of occipital/cervicalgia, myofascial pain, fibromyalgia, and back pain are severe impairments but her mental impairment is not severe.  The Commissioner subsequently found that Minirth's non-exertional limitations do not significantly diminish her residual functional capacity to

---

[3]

But see <u>Lucy v. Chater</u>, 113 F.3d 905 (8th Cir. 1997).  In that case, the Court of Appeals opined the following:

> If the claimant's characteristics do not differ significantly from those contemplated in the ... Guidelines, the [Commissioner] may rely on the Guidelines alone to direct a finding of disabled or not disabled. ... That is to say, "[the Commissioner] may use the Guidelines even though there is a nonexertional impairment if the [Commissioner] finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." ..

See <u>Id</u>. at 908 [quoting <u>Thompson v. Bowen</u>, 850 F.2d 346, 349 (8th Cir. 1988)].  The Court of Appeals in <u>Lucy v. Chater</u> omitted the word "significantly" from the phrase "does not **significantly** diminish her residual functional capacity to perform the full range of activities listed in the Guidelines" found in <u>Reed v. Sullivan</u>.

perform the full range of activities listed in the Guidelines.

Substantial evidence on the record as a whole supports the finding that Minirth's history of occipital/cervicalgia, myofascial pain, fibromyalgia, and back pain are severe impairments.  Substantial evidence on the record as a whole does not, however, support the finding that her mental impairment is not severe.  In addition, substantial evidence on the record as a whole does not support the finding that her non-exertional limitations, i.e., her mental impairment and her history of occipital/cervicalgia, myofascial pain, fibromyalgia, and back pain, do not significantly diminish her residual functional capacity to perform the full range of activities listed in the Guidelines.

With regard to whether Minirth's mental impairment is severe–an impairment the Court understands to be depression and/or a generalized anxiety disorder–the record reflects that Dr. Mary Ellen Ziolko ("Ziolko") performed a consultative examination of Minirth's mental health in April of 2004.  In outlining Minirth's mental health history, Ziolko noted that Minirth has been prescribed Lexapro for "depression associated with … [f]ibromyalgia."  See Transcript at 197.  Ziolko noted Minirth's representation that "the Lexapro is helping."  See Transcript at 197.  Ziolko opined that Minirth's ability to understand, carry out, and remember instructions, and to respond appropriately to supervision, co-workers, and work pressure in a work setting is "below average."  See Transcript at 202.  Ziolko diagnosed Minirth as suffering from a "generalized anxiety

disorder." <u>See</u> Transcript at 202.

A consultative psychiatric examination of Minirth was performed by Dr. Brad Williams during the same month and affirmed by Dr. Dan Donahue ("Donahue") in July of 2004. Minirth was diagnosed with "generalized persistent anxiety accompanied by ... motor tension, autonomic hyperactivity, and apprehension expectation." <u>See</u> Transcript at 242. In determining Minirth's degree of functional limitation, Donahue affirmed the following findings: (1) Minirth has a mild restriction of activities of daily living, (2) she has moderate difficulty in maintaining social functioning, and (3) she has moderate difficulty in maintaining concentration, persistence, or pace. <u>See</u> Transcript at 247.

Notwithstanding the foregoing, the Commissioner found that Minirth's mental impairment is not severe. A thorough examination of the Commissioner's analysis reveals, however, that much of the analysis goes to Minirth's credibility and strays from a medical determination. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987) (determination at step two is medical determination). Stripping away the credibility portion of the Commissioner's analysis, the Court finds that substantial evidence on the record as a whole does not support the finding that Minirth's mental impairment is not severe. Rather, substantial evidence on the record as a whole indicates that her mental impairment is severe, that is, it has "'more than a minimal effect on [her] ability to work.'" <u>See</u> <u>Henderson v. Sullivan</u>, 930 F.2d 19, 21 (8th Cir. 1992) [quoting <u>Hudson v. Bowen</u>, 870 F.2d 1392, 1396 (8th Cir. 1989)]. The Commissioner was thus obligated to

consider Minirth's mental impairment in determining her residual functional capacity.

As the Court noted above, the Commissioner found that Minirth's non-exertional limitations, i.e., her mental impairment and her history of occipital/cervicalgia, myofascial pain, fibromyalgia, and back pain, do not significantly diminish her residual functional capacity to perform the full range of activities listed in the Guidelines. Apparently for that reason, the Commissioner relied upon the Guidelines at step five. Substantial evidence on the record as a whole indicates otherwise, and the Commissioner's use of the Guidelines at step five was improper.

With regard to Minirth's mental impairment, the Court will not repeat the summary of the medical evidence supporting the impairment. It appears to significantly diminish her residual functional capacity because it appears to preclude her from engaging in the full range of activities listed in the Guidelines "under the demands of day-to-day life." See Lucy v. Chatter, 113 F.3d 905, 908 (8th Cir. 1997).[4] Her ability to understand, carry out, and remember instructions, and to respond appropriately to supervision, co-workers, and work pressure in a work setting is "below average," and she has mild to moderate difficulties in activities of daily living, in maintaining social

---

[4] "In this context, 'significant' refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled." See Id.

functioning, and in maintaining concentration, persistence, or pace.

With regard to Minirth's history of occipital/cervicalgia, myofascial pain, fibromyalgia, and back pain, substantial evidence on the record as a whole suggests that the impairments significantly diminish her residual functional capacity.  First, it is worth noting that there is medical evidence supporting her allegations of pain, e.g., her fibromyalgia.  Second, the medical evidence provides an objective basis for her testimony during the administrative hearing that she experiences significant pain and fatigue.  Last, although Minirth's daily activities are not inconsequential, e.g., she is apparently able to do yoga exercises, they do suggest some degree of limitation.

The Court finds in conclusion that substantial evidence on the record as a whole does not support the Commissioner's findings at steps two and five.  Specifically, substantial evidence on the record as a whole does not support the following findings: (1) Minirth's mental impairment is not severe, and (2) her non-exertional impairments do not significantly diminish her residual functional capacity.  Given the lack of evidence supporting the latter finding, the Commissioner's use of the Guidelines was improper. The Commissioner's decision is therefore reversed, and this proceeding is remanded. The Commissioner is directed to solicit the testimony of a vocational expert in attempt to determine whether Minirth can perform any work.  This remand is a "sentence four" remand as that phrase is defined  in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S.

89 (1991).  Judgment will be entered for Minirth.

IT IS SO ORDERED this ___15___ day of August, 2007.


_____
UNITED STATES MAGISTRATE JUDGE